UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re *Ex Parte* Application of STATE CORPORATION DEPOSIT INSURANCE AGENCY on behalf of INTERNATIONAL BANK OF ST. PETERSBURG for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782. | Case No. 21 Misc. 0800 |

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION UNDER 28 U.S.C. § 1782

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

# TABLE OF CONTENTS

PAGE NO.

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND......................................................................2

    The Dissipation Of Assets By The Beneficiaries Of IBSP.............................................................3

    The Anticipated Proceedings Against Bazhanov, Zuev, and Hervet..................................7

    The Requested Discovery ...........................................................................................................9

ARGUMENT ...............................................................................................................................11

    I.       THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782 ARE MET.........11

           A.      SCB Is Found in This District...................................................................11

           B.      The Evidence Sought Is "For Use" in Foreign Proceedings.....................12

           C.      Petitioner Is an Interested Person...............................................................12

    II.      THE DISCRETIONARY FACTORS FAVOR GRANTING THE
           APPLICATION ...........................................................................................13

           A.      SCB Is Not a Participant in the Foreign Proceedings ...............................13

           B.      The Foreign Proceedings Would Be Receptive to U.S. Judicial
               Assistance ...................................................................................................14

           C.      Petitioner Is Not Circumventing Foreign Proof-Gathering
               Restrictions ................................................................................................14

           D.      The Discovery Is Not Unduly Intrusive or Burdensome ...........................15

    III.     THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX
           PARTE*..........................................................................................................16

CONCLUSION..............................................................................................................................17

# TABLE OF AUTHORITIES

**PAGE NO.**

## CASES

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)...................................................................... 11, 13

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995)...................................................................... 14

*Gushlak v. Gushlak*,
   486 Fed.Appx. 215 (2d Cir. 2012)............................................................ 16

*In re Alghanim*,
   No. 17-MC-406, 2018 WL 2356660 (S.D.N.Y. May 9, 2018)................... 15

*In re Application of Aso for an Order Pursuant to 28 U.S.C. 1782 to conduct Discovery for Use in Foreign Proceedings*,
   No. 19-1716, 2019 WL 4296121 (2d Cir. Aug. 20, 2019) ....................... 16

*In re Application of Hornbeam Corp.*,
   No. 14-MC-424, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014)................. 16

*In re Application of Olga Sumar*,
   123 F.R.D. 467 (S.D.N.Y. 1988) .............................................................. 15

*In re Aso*,
    No. 19-MC-190, 2019 WL 2345443 (S.D.N.Y. June 3, 2019)................. 16

*In re Dickson*,
   No. 20 Misc. 51, 2020 WL 550271 (S.D.N.Y. Feb. 4, 2020).................... 13

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*,
   No. 15-MC-417, 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016)................. 16

*In re* Ex Parte *Application of State Corp. Deposit Ins. Agency on Behalf of Int'l Bank of St. Petersburg*,
   20 Misc. 448 (S.D.N.Y.) ........................................................................... 10

*In re Republic of Kazakhstan*,
   110 F. Supp. 3d 512 (S.D.N.Y. 2015)...................................................... 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004).................................................................. 2, 11, 12, 13

*Lancaster Factoring Co. v. Mangone*,
    90 F.3d 38 (2d Cir. 1996)....................................................................... 11

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015)........................................................... 12, 14, 15

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004)..................................................................... 13

*Shaw v. Arena*,
    No. 17-MC-0448, 2018 WL 324896 (S.D.N.Y. Jan. 3, 2018)................................. 15

## OTHER AUTHORITIES

Russian Civil Code Article 10 ......................................................................... 8, 13

Russian Civil Code Article 1064 ..................................................................... 8, 13

Russian Civil Code Article 15 ......................................................................... 8, 13

Russian Law on Bankruptcy Article 189 ........................................................... 9, 13

Russian Law on Bankruptcy Article 61 ......................................................... 8, 9, 13

## RULES

Fed. R. Civ. P 45 ............................................................................................... 1

Fed. R. Civ. P. 26 ......................................................................................... 1, 15

## PRELIMINARY STATEMENT

Petitioner State Corporation Deposit Insurance Agency on behalf of International Bank of St. Petersburg ("Petitioner" or "DIA") submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 26 and 45 and 28 U.S.C. § 1782, to obtain narrowly targeted discovery in this District from Standard Chartered Bank, USA, 1395 Avenue of the Americas, New York, New York 10036 ("SCB"), to support legal proceedings in Russia.

The single document request sought here is narrowly targeted at wire transfer information for use in forthcoming fraud proceedings in a Russian court against Sergei Bazhanov, Alexander Zuev, and Hervet Investments Limited ("Hervet"), who are all former managers and stakeholders of the now bankrupt International Bank of St. Petersburg ("IBSP"). In an elaborate scheme of fraudulent transactions, Bazhanov, Zuev, and Hervet drained IBSP's valuable assets, causing millions of dollars in losses to IBSP's creditors. Now that this scheme has come to light—and spawned bankruptcy proceedings in Russia—Petitioner, as official receiver of IBSP, plans to commence further proceedings against Bazhanov, Zuev, and Hervet to recover damages sustained by IBSP as a result of their fraudulent dealings (the "Foreign Proceedings").

Hervet received payments from this fraudulent scheme in U.S. dollars and through accounts opened with SCB. Discovery into those transactions will reveal the ultimate recipients of the profits from the various transactions Bazhanov, Zuev, and Hervet conducted, helping to prove that those transactions were fraudulent and potentially identifying additional parties to add as defendants in the Foreign Proceedings.

Less than one year ago, on November 24, 2020, this Court (Engelmayer, J.) granted a similar application for narrowly targeted discovery against two other New York banks for use in the same Foreign Proceedings. *See* Exhibit C to the Declaration of O. Andrew F. Wilson ("Wilson Decl.").

This application should similarly be granted because Petitioner satisfies Section 1782's statutory and discretionary factors. Petitioner will be the plaintiff in the anticipated Foreign Proceedings and seeks discovery for use in that litigation from SCB in this District. Such discovery is supported by the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244-45 (2004). First, SCB will not be a party to the anticipated Foreign Proceedings. Second, the discovery sought may be used in the Foreign Procedings. Third, this application is not an attempt to circumvent Russian evidence-gathering restrictions. And fourth, the requested discovery is tailored and minimally burdensome.

Accordingly, Petitioner respectfully requests that this Court grant this *ex parte* application for discovery for use in foreign proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner DIA is a Russian state corporation that protects the interests of banks, depositors, and other creditors, and that generally enhances confidence in the Russian bank system. *See* October 29, 2021 Declaration of German Shubin ("Shubin Decl.") ¶ 5.[1] Under the laws of the Russian Federation, the DIA also acts as the official receiver of bankrupt banks, if such banks had a license to accept deposits from individuals. *Id.* IBSP, a bank duly incorporated under the laws of the Russian Federation, was recently declared bankrupt and insolvent. *Id.* ¶ 6. Prior to the bankruptcy proceedings, IBSP was ranked at the top of the second hundred Russian banks in terms of assets and in the first hundred Russian banks in terms of amount of funds deposited by individuals. *Id.*

Sergei Bazhanov was the Chairman of the Management Board of IBSP (essentially, the CEO of IBSP) and also a majority shareholder with a 92.28% stake in the bank. *Id.* ¶ 7. One of

---

[1]     The Shubin Decl. is attached to the Wilson Decl. as Exhibit D.

IBSP's other shareholders was Hervet, a company incorporated under the laws of the Republic of Cyprus. *Id.* Hervet was a minority shareholder of IBSP since 2017; its stake was 0.77%. *Id.*

### The Dissipation Of Assets By The Beneficiaries Of IBSP

In August 2018, the Central Bank of Russia ("CBR") conducted an unscheduled audit of IBSP. *Id.* ¶ 8. As a result of the audit, on October 15, 2018, the CBR appointed the DIA as provisional administrator of IBSP, pursuant to the Russian Law on Bankruptcy ("Bankruptcy Law"). *Id.* The authority of IBSP's management was immediately suspended, and the CBR introduced a moratorium on creditors' claims. *Id.* On the same date, the CBR published a press release on its official website about this event. *Id.* ¶ 9. In the press release, the CBR pointed out that the DIA had been appointed as provisional administrator due to the "unstable financial state [of IBSP]" and the "existence of a threat to interests of [IBSP's] creditors and depositors." *Id.*

On October 31, 2018, the CBR withdrew the banking license of IBSP and appointed provisional administrators to manage IBSP until the bank entered official receivership or liquidation. *Id.* ¶ 10. The provisional administrators made an assessment of IBSP's financial state and discovered signs of IBSP's insolvency. *Id.* ¶ 11. A report prepared for the CBR stated that IBSP's obligations to its creditors were RUB 23,879,182,000 (around USD 363 million)  and its assets were RUB 10,845,064,000 (around USD 165 million). *Id.* On November 19, 2018, the Arbitrazh (Commercial) Court of Saint-Petersburg and the Leningrad Region accepted an application of the CBR to declare IBSP bankrupt. *Id.* ¶ 12. On September 24, 2019, the same court declared IBSP bankrupt (the reasoned decision was executed on October 3, 2019). *Id.* The DIA was appointed as official receiver, and the bankruptcy proceedings are still ongoing. *Id.*

On October 22, 2019, an English-language press release on the CBR website reported that, in the course of their investigation of IBSP, the CBR provisional administrators had "established that the bank's officials had conducted operations which suggest the intention to

3

divert assets through lending to legal entities (including those associated with the bank) incapable of meeting their obligations and through disposal of the Bank's property." *Id.* ¶ 13.

The CBR investigation also established that Hervet actively participated in the dissipation of IBSP's assets. *Id.* ¶ 14. Hervet is an offshore company, incorporated in Cyprus, which has not provided its financial statements to Cypriot authorities over the past few years. *Id.* Hervet must have been aware of IBSP's pre-bankruptcy state, because, as described below, less than two months before the withdrawal of IBSP's license, Hervet withdrew its IBSP funds. *Id.*

In their report, the provisional administrators described and relied upon a several suspicious transactions involving Hervet. *See id.* ¶ 15. These transactions can be divided into three groups. *Id.* ¶¶ 15-21.

The first group of suspicious transactions includes substantially similar sale-purchase agreements of credit linked notes ("CLN") entered into by IBSP and Riverrock Securities Limited ("RSL"), a company incorporated under the laws of the United Kingdom. *Id.* ¶ 16. The transactions were structured as follows: throughout 2018 RSL extended several loans to Hervet; RSL then sold the loans to UBS AG (London Branch) ("UBS"); UBS subsequently issued and sold CLNs back to RSL, which included the RSL-Hervet loans as a base asset; finally RSL sold those CLNs to IBSP for approximately USD 140 million. *Id.* At the time IBSP bought the Hervet-loan backed CLNs, IBSP knew or should have known that Hervet did not have sufficient assets to repay the loans. If IBSP had evaluated Hervet's assets before it purchased the CLNs from RSL, it would have been obvious that Hervet was under-capitalized and could not repay the loans underlying the CLNs. *Id.* ¶ 17.

Shortly after the revocation of IBSP's license, Hervet stopped paying the interest due to UBS on the loans, triggering a default event. *Id.* Also, in a letter dated December 11, 2018—only

five months after IBSP made its final purchase of a Hervet-backed CLN—Hervet informed IBSP

that it was "unable to pay its debts as they fall due to the Bank," under some other agreements.

*Id*. As a result of this scheme and due to features of CLN regulation, IBSP acquired rights to

claim repayment of the loans granted to Hervet, but because the principal due on the loans is far

greater than Hervet's assets, the scheme has led to significant losses for IBSP. *Id.*

The second group of suspicious transactions are those connected with the issuance of

letters of credit. *Id.* ¶ 18. IBSP executed several letters of credit issuance agreements ("LC

Issuance Agreements") with four Swiss companies. *Id.* These Swiss companies, prior to the

execution of the agreements, entered into soybean sale contracts with Hervet. *Id.* The letters of

credit were means of payment to commodity companies from which the Swiss companies had

purchased those soybeans for Hervet. *Id.* Shortly after execution of the LC Issuance Agreements,

IBSP and the Swiss companies executed discharge agreements pursuant to which IBSP acquired

rights to receive payment from Hervet to the Swiss companies under the sale contracts and

simultaneously acknowledged that the Swiss companies' obligations under the LC Issuance

Agreements had been discharged. *Id.* Thus, IBSP, in lieu of rights to receive payment from large

and financially stable companies, received worthless claims on paper against Hervet, causing

IBSP about $83 million in losses. *Id*.

The third group of suspicious transactions comprises assignment agreements related to

liquid indebtedness. *Id.* ¶ 19. IBSP issued two letters of credit for a total of about $30 million in

favor of Simec Group Limited, a company incorporated under the laws of Hong Kong. *Id.* IBSP

then executed an assignment agreement with Hervet, pursuant to which Hervet acquired rights to

claim repayments from Simec Group Limited. *Id.* At the same time, the purchase price for these

rights did not become due until July 2025. *Id.* Such a long term for payment of the price is a

strong indicator of the parties' intention to dissipate liquid assets. *Id.* As a result of this transaction, IBSP again acquired a worthless claim on paper against Hervet. *Id.*

A similar scheme was performed in relation to the indebtedness of Group Rich Enterprises Limited ("Group Rich"), a company incorporated under the laws of Hong Kong. *Id.* ¶ 20. A loan agreement was executed between IBSP and Group Rich. *Id.* In just over one year after the execution of this agreement, IBSP executed an assignment agreement with Hervet. *Id.* According to this agreement, Hervet acquired the right to claim USD 7 million from Group Rich. *Id.* However, Hervet has not paid any money due under this agreement to IBSP, because there is no payment due until July 2025. *Id.* Once again, IBSP, in lieu of its claim to Group Rich, obtained a claim to Hervet with an unreasonably long deferral of payment. *Id.*

All the above-mentioned transactions are now being challenged by the DIA on the basis of specific provisions of the Bankruptcy Law, but no final decisions have been rendered thus far. *Id.* ¶ 21.

Hervet executed four deposit agreements with IBSP and opened relevant accounts with the bank into which it deposited funds. *Id.* ¶ 22. From September 17, 2018 to September 28, 2018, funds initially deposited by Hervet in these accounts were transferred back to its accounts with Raiffeisen Bank International AG ("Raiffeisen"). SCB is Raiffeisen's correspondent bank for transactions executed in U.S. dollars. *Id.* ¶ 38. On October 18, 2019, the DIA filed a complaint with the Arbitrazh (Commercial) Court of Saint-Petersburg and the Leningrad region in an attempt to declare void any payments made by IBSP to Hervet under the deposit agreements. *Id.* ¶ 22. The total amount of money transferred back to Hervet was around RUB 1.1 billion (around USD 16.7 million). *Id.* Hervet withdrew its IBSP deposits less than two months before the CBR withdrew IBSP's license, which was to the detriment of other creditors of IBSP

because these transfers were performed with unfair preference, contrary to provisions of the Bankruptcy Law. *Id.*

 As described above, suspicious transactions involving Hervet led to substantial dissipation of IBSP's assets—totaling about $276 million in damages—to the impairment of IBSP creditors' rights. *Id.* ¶ 23. In the meantime, the difference between IBSP's total liabilities and the value of its assets pursuant to the initial assessment of the DIA amounted to less than $200 million. *Id.*

 Notably, Hervet is not only a minority shareholder of IBSP, but it is also affiliated with its management. *Id.* ¶ 24. On June 18, 2018, Bazhanov sent a letter to Louis Dreyfus Suisse SA, in which he confirmed that Hervet was under the ultimate control of IBSP. *Id.* He also confirmed that Alexander Zuev—who is Bazhanov's brother-in-law—was a direct owner of Hervet, acting for and on behalf of IBSP. *Id.* Zuev also had been a member of IBSP's board of directors for approximately 15 years. *Id.* ¶ 25. Zuev's sister (Bazhanov's wife) was the Chairman of IBSP's Board of Directors, and Bazhanov was another member of the board of directors. *Id*. This nepotism further supports the fraudulent nature of the above-described transactions. *Id.*

 In late 2019, criminal charges were filed against Bazhanov for his role in these transactions, alleging falsification of financial statements of a financial organization. *Id.* ¶ 26. In anticipation of the criminal case against him, Bazhanov is believed to have fled to either England or France, where he apparently remains. *Id.*

***The Anticipated Proceedings Against Bazhanov, Zuev, and Hervet***

 The DIA, as official receiver of IBSP, anticipates commencing legal proceedings in Russia against Hervet, Bazhanov, and Zuev to hold them jointly and separately liable for damages caused by the above-described fraudulent transactions to depositors and other creditors of IBSP. *Id.* ¶ 27. The DIA now seeks discovery pursuant to 28 U.S.C. § 1782 for use in those

anticipated proceedings. *Id.* ¶ 28. Specifically, the DIA intends to bring proceedings under five provisions of Russian law. *Id.* ¶ 29.

First, Article 61.10(4) of the Bankruptcy Law provides that, unless proved otherwise, a person who benefits from unlawful and bad-faith conduct of persons is assumed to be authorized to act on behalf of the debtor, as a person controlling the debtor. *Id.* ¶ 29(a). The Supreme Court of the Russian Federation has further clarified this provision and noted that a person who has received substantial profits, which would not have been received if the CEO of the debtor had acted in good faith, may be considered a person controlling the debtor. *Id.* The concept of persons controlling the debtor is quite broad under the Bankruptcy Law and may also include legal entities. *Id.*

Second, Article 10(4) of the Civil Code of the Russian Federation ("Civil Code") provides that if a person abusing his own rights violated rights of other persons, such persons can claim damages caused by the abuse of rights. *Id.* ¶ 29(b).

Third, Article 15(1) of the Civil Code provides that a person whose rights have been violated may claim damages caused in full, unless a law or a contract specifies otherwise. *Id.* ¶ 29(c).

Fourth, pursuant to Article 1064(1) of the Civil Code, harm inflicted to property of an individual or legal entity by a tortfeasor must be recovered in full. *Id.* ¶ 29(d). This article provides for the so-called "principle of general delict," which means that any harm caused to another person shall be compensated. *Id.* This principle implies a broad scope of application and may be used in any case against any tortfeasor unless the tortfeasor proves that the harm caused was not due to his fault, or that his actions were lawful. *Id.*

Finally, pursuant to Articles 61.11(1) and 189.23(1) of the Bankruptcy Law, if payments to the creditors cannot be made in full due to actions or omissions of persons controlling the debtor, such persons shall bear subsidiary liability for the debtor's obligations. *Id.* ¶ 29(e).

In order for IBSP to prevail in these anticipated proceedings, it is important to establish who orchestrated Hervet's participation in the fraud and a full list of companies to which the money that dissipated from IBSP was transferred. *Id.* ¶ 30. This list will help prove that the above-mentioned transactions were fraudulent and aimed at enrichment of the anticipated defendants. *Id.* There could also be other, currently unknown beneficiaries of the suspicious transactions whose identities may be revealed through additional disclosures. *Id.* ¶ 31. If so, the DIA intends to bring proceedings against such beneficiaries. *Id.*

For these purposes, the DIA now seeks targeted discovery pursuant to 28 U.S.C. § 1782. *Id.* ¶ 32.

### *The Requested Discovery*

Petitioner seeks discovery of records concerning wire transfers sent or received by Hervet where SCB acted as the correspondent bank of Raiffeisen, to determine who orchestrated Hervet's participation in the fraud and to whom the profits from the suspicious transactions were distributed. *Id.* ¶ 33.

Hervet received payments under the suspicious transactions in U.S. dollars. *Id.* ¶ 38. Because Hervet executed these suspicious transactions in U.S. dollars, and SCB is Raiffeisen's correspondent bank for U.S. dollars transactions, it is highly likely that SCB will have documents concerning the transactions and the transfers of funds into Hervet's Raiffeisen account. *Id.*

Disclosures obtained following the DIA's successful § 1782 application in November 2020 bear this out. Included within the disclosures were spreadsheets containing information

about a number of transactions in which Hervet and SCB participated.[2] *Id.* ¶ 39. One spreadsheet

contains twelve records of transactions in which Hervet is listed as the originator party and SCB

is listed as the debiting bank. In nine of those twelve records, Louis Dreyfus Company Asia Pte

Ltd ("LDC Asia") is listed as a final beneficiary. *Id.* ¶ 40. LDC Asia is one of the commodity

companies from which Swiss companies purchased soybeans for Hervet. *Id.* ¶ 18**.** The total value

of the transactions with LDC Asia is around USD 11.5 million. *Id.* ¶ 40. IBSP is also listed as a

final beneficiary of three other transactions totaling USD 29.4 million. *Id.* There is one

transaction in the spreadsheet in which LDC Asia is the originator party, SCB is the crediting

bank, and Hervet is a final beneficiary. *Id.*

Another spreadsheet included in the disclosures contains two records of transactions in

which Hervet is listed as the originator party and SCB is listed as the reimbursing bank. *Id.* ¶ 41.

Bank Julius Baer Zurich is listed as a beneficiary under these transactions, which total around

USD 10 million. *Id.*

Discovery from SCB will help the DIA prove who orchestrated Hervet's participation in

the fraud and understand to whom Hervet was transferring money after its receipt through the

suspicious transactions. This discovery is necessary to track the further movement of the funds

and to help confirm the ultimate recipients or beneficiaries of these transactions. *Id.* ¶ 42.

Discovery from SCB can be used in the Foreign Proceedings the DIA will file. *Id.* ¶ 43. Russian

laws do not prohibit the acquisition or use in civil proceedings of bank records such as those

sought here. *Id.* ¶ 44.

---

[2]     Petitioner has not included these spreadsheets in this filing because they are subject to a Confidentiality
Agreement and Protective Order entered by Judge Engelmayer. *See In re* Ex Parte *Application of State Corp.
Deposit Ins. Agency on Behalf of Int'l Bank of St. Petersburg*, 20 Misc. 448 (S.D.N.Y.), Dkt. 7. Petitioner will
provide the Court with these materials under seal if the Court believes it would be helpful to the adjudication of this
application.

**ARGUMENT**

28 U.S.C. § 1782 (a) provides:

> The district court of a district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigation conducted before formal accusation. The order may be made . . . upon the application of any interested person.

The goals of the statute "are to provide equitable and efficacious discovery procedures in the United States for the benefit of tribunals and litigants involved in litigation with international aspects, and to encourage foreign countries by example to provide similar . . . assistance" to U.S. courts. *Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996) (cleaned up). "In pursuit of these twin goals, the section has, over the years, been given increasingly broad applicability." *Id.* (cleaned up).

Where a court finds that the statutory requirements of § 1782 are met, it may, in its discretion, grant an application for discovery. *See Intel*, 542 U.S. at 264-65.

**I.  THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782 ARE MET**

A district court is authorized to grant an application under § 1782 where "(1) the person from whom discovery is sought resides (or is found) in the district . . . , (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). Petitioner's application meets all three requirements.

**A.  SCB Is Found in This District**

SCB is found in the Southern District of New York because it is located in Manhattan. *See* Wilson Decl. ¶ 4.

B.      **The Evidence Sought Is "For Use" in Foreign Proceedings**

The anticipated Foreign Proceedings are well within the statute's broad scope. "The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding . . . ." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). The evidence need not be necessary for the applicant to prevail, or even admissible in the foreign proceeding. *See id.* at 298-99 & n.8. The evidence only needs to be able to play some productive role "at some stage of a foreign proceeding . . . within reasonable contemplation." *Id.* at 301. Nor must the proceeding be currently underway. The Supreme Court has held that under § 1782, "[i]t is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding." *Intel*, 542 U.S. at 259 (citation and quotation marks omitted).

The evidence Petitioner seeks here is important to establish who received the profits from the fraudulent transactions engaged in by Bazhanov, Zuev, and Hervet. The Hervet-involved transactions caused $276 million in damages to IBSP. Shubin Decl. ¶ 23. Identifying the recipients of the profits from those transactions will assist in proving that the transactions were fraudulent and executed for the purpose of enriching Bazhanov and Zuev. *Id.* ¶ 30. Identifying the beneficiaries of these transactions could also reveal additional parties that the DIA may name as defendants in the Foreign Proceedings. *Id.* ¶ 31. Petitioner will be able to use any relevant evidence obtained from SCB in the anticipated Foreign Proceedings. *Id.* ¶ 37. Petitioner anticipates commencing legal proceedings in Russia to recover damages. *Id.* ¶ 27. Petitioner therefore satisfies the statute's "for use" requirement with respect to the Foreign Proceedings.

C.      **Petitioner Is an Interested Person**

Petitioner is an "interested person" in the Foreign Proceedings. In *Intel*, the Supreme Court held that the term "interested person" includes litigants in the foreign proceeding and all

other persons with a reasonable interest in obtaining judicial assistance. *Intel*, 542 U.S. at 256.

Here, Petitioner is the official receiver of IBSP and will be the plaintiff, on behalf of IBSP, in the

anticipated Foreign Proceedings. Petitioner makes this application on behalf of IBSP, whose

creditors and depositors suffered significant financial harm, and so it has "a reasonable interest in

obtaining judicial assistance" from a Russian court by bringing the anticipated litigation. *Id*; *In re

Dickson*, No. 20 Misc. 51, 2020 WL 550271, at *1 (S.D.N.Y. Feb. 4, 2020) (finding a

bankruptcy receiver to be an "interested person" for purposes of § 1782).

## II.     THE DISCRETIONARY FACTORS FAVOR GRANTING THE APPLICATION

"Once the statutory requirements [of § 1782] are met, a district court is free to grant

discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84

(2d Cir. 2004) (cleaned up). The Supreme Court has identified several factors for courts to

consider in weighing a § 1782 application: (1) whether the person from whom discovery is

sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the

character of the proceeding underway, and the foreign tribunal's receptivity to federal-court

assistance; (3) whether the application conceals an attempt to circumvent the proof-gathering

restrictions of a foreign country; and (4) whether the application is unduly intrusive or

burdensome. *See Intel*, 542 U.S. at 264-65; *Brandi-Dohrn,* 673 F.3d at 80-81.

All these factors support granting Petitioner's application.

### A.     SCB Is Not a Participant in the Foreign Proceedings

Judicial assistance under § 1782 is less appropriate when the targets of discovery are

participants in the foreign proceedings and the foreign tribunal can directly order them to

produce evidence. *See Intel*, 542 U.S. at 264. Here, SCB will not be a party to the anticipated

Foreign Proceedings. The Foreign Proceedings will be brought under Articles 61.10(4), 61.11(1),

and 189.23(1)  of the Russian Law on Bankruptcy and Articles 10 (4), 15(1), 1064(1) of the

13

Russian Civil Code against former directors and stakeholders of IBSP, who engaged in a series of fraudulent transactions to the detriment of IBSP's creditors. Shubin Decl. ¶¶ 15-29. SCB is not alleged to have orchestrated or profited from the fraudulent transactions and will not be a party to the anticipated proceedings. Accordingly, ordering SCB to produce materials in this § 1782 proceeding is not duplicative of the Foreign Proceedings.

### B.      The Foreign Proceedings Would Be Receptive to U.S. Judicial Assistance

The second discretionary factor, concerning the nature of the foreign tribunal and its receptivity to federal-court assistance, weighs in Petitioner's favor absent "authoritative proof that [the] tribunal would reject evidence obtained with the aid of § 1782." *Mees*, 793 F.3d at 303 n.20 (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)); *accord In re Republic of Kazakhstan*, 110 F. Supp. 3d 512, 517 (S.D.N.Y. 2015). In this case, Petitioner will be able to submit materials obtained in this proceeding in the Foreign Proceedings. Shubin Decl. ¶¶ 37-38.

### C.      Petitioner Is Not Circumventing Foreign Proof-Gathering Restrictions

Petitioner's application does not conceal an attempt to circumvent any proof-gathering restrictions. The "proof-gathering restrictions" relevant for analysis under § 1782 are "rules akin to privileges that *prohibit* the acquisition or use of certain materials," not "rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303 n.20 (emphasis in original). Even if materials are not discoverable in a jurisdiction, they are only subject to a "proof-gathering restriction" if the jurisdiction would actively prevent the materials from being used or obtained.

No such proof-gathering restrictions exist here. There are no apparent barriers to the acquisition of this evidence for use in the Foreign Proceedings. Shubin Decl. ¶ 38.

### D.      The Discovery Is Not Unduly Intrusive or Burdensome

The document discovery Petitioner seeks is tailored and not unduly intrusive or burdensome. A "district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Under Rule 26, the court must consider whether the information requested is "relevant" and "proportional to the needs of the case." Fed. R. Civ. P. 26 (b)(1); *see also Shaw v. Arena*, No. 17-MC-0448, 2018 WL 324896, at *2 (S.D.N.Y. Jan. 3, 2018) (recipient of subpoena must prove undue burden, and generalized assertions alone are insufficient). The requested discovery in this case—for documents concerning wire transfers sent or received by Hervet where SCB acted as the correspondent bank of Raiffeisen—is limited. It is also tailored to Petitioner's goal of identifying those responsible for orchestrating Hervet's participation in the fraud, tracing the money Hervet received from the fraudulent transactions, and identifying the companies to which it was transferred.

The discovery sought is not unduly burdensome. *See In re Application of Olga Sumar*, 123 F.R.D. 467, 472-73 (S.D.N.Y. 1988) (finding that a subpoena and order issued under 28 U.S.C. § 1782 were "neither unreasonable nor oppressive" where they were "sufficiently specific" and specified "with reasonable particularity the subjects to which the documents relate"); *In re Alghanim*, No. 17-MC-406, 2018 WL 2356660, at *4-5 (S.D.N.Y. May 9, 2018) (finding that subpoena "broadly seek[ing] invoices, bank statements, and other documentation" and that resulted in approximate 3,000 responsive documents was "not unduly burdensome or intrusive"). The discovery sought from SCB is highly relevant to tracing the profits from the fraudulent transactions that will be the subject of the Foreign Proceedings, and are narrowly tailored and minimally burdensome. All SCB must do is provide records concerning one

company. That is not an unreasonable burden on a large corporation. *See In re Application of Hornbeam Corp.*, No. 14-MC-424, 2014 WL 8775453, at *3, *5 (S.D.N.Y. Dec. 24, 2014) (request to major banks for wire transfer records for all transactions involving a series of entities not unduly burdensome); *In re Aso*, No. 19-MC-190, 2019 WL 2345443, at *8 (S.D.N.Y. June 3, 2019), *appeal withdrawn sub nom. In re Application of Aso for an Order Pursuant to 28 U.S.C. 1782 to conduct Discovery for Use in Foreign Proceedings*, No. 19-1716, 2019 WL 4296121 (2d Cir. Aug. 20, 2019) (request to five entities across twenty-two years in connection with a divorce proceeding was not unduly intrusive or burdensome).

## III.    THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE*.

The Court should grant Petitioner's application *ex parte*. Applications pursuant to 28 U.S.C. § 1782 are frequently granted *ex parte. See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte."). *Ex parte* applications under Section 1782 are appropriate because the subpoenaed party, once served, is entitled to move to quash or modify the subpoena. *In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, No. 15-MC-417, 2016 WL 702327, at *1 n.3 (S.D.N.Y. Feb. 18, 2016) ("As typically or, at least, frequently is the case in § 1782 proceedings, leave to serve the subpoenas was granted *ex parte*, which is appropriate because all questions with respect to the propriety of the grant of leave and with respect to the content to the subpoenas are available to every subpoenaed party via a motion to quash").

Here, as in other applications brought under § 1782, the granting of Petitioner's application *ex parte* would not prejudice SCB as it will have an opportunity to challenge the discovery Petitioner is seeking once it i served with a subpoena. Accordingly, this Court should

grant Petitioner leave, *ex parte*, to serve the subpoena annexed to the Wilson Declaration as Exhibit B.

**CONCLUSION**

This application for discovery in aid of the Foreign Proceedings satisfies the requirements of 28 U.S.C. § 1782. The discretionary factors also favor granting the application. The Court should grant the application and issue the Proposed Order attached to the Wilson Declaration as Exhibit A to allow Petitioner to serve the subpoena annexed as Exhibit B to the Wilson Declaration to obtain relevant evidence to aid in the Foreign Proceedings.

Dated:   New York, New York
          November 1, 2021

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

By:        /s/
          O. Andrew F. Wilson
          Samuel Shapiro

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Petitioner*